UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
**CICERA FLEMING**,

                    Plaintiff,

           – against –

**COSTCO WHOLESALE CORPORATION**,

                    Defendant.
------------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

17-CV-2878 (AMD) (PK)

**ANN M. DONNELLY**, United States District Judge:

On December 29, 2016, the plaintiff filed a complaint in the New York Supreme Court, alleging that the defendant's negligence caused her to slip and fall in a Brooklyn Costco store. (ECF No. 1 at 7-8.) The defendant removed the action to federal court on May 11, 2017 (ECF No. 1 at 1-4), and moved for summary judgment on December 18, 2019 (ECF No. 31). The plaintiff opposes the motion for summary judgment. (ECF No. 36.) For the reasons that follow, the defendant's motion is granted in part and denied in part.

## BACKGROUND[1]

On March 7, 2016, the plaintiff went to the Brooklyn Costco Warehouse with her niece, Miranda Richardson. (ECF No. 30, Def. Rule 56.1 Statement ("Def. 56.1") ¶¶ 1-3.)[2] Shortly

---

[1] In deciding whether summary judgment is appropriate, the Court resolves all ambiguities and draws all reasonable inferences in favor of the plaintiff, the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

[2] Unless otherwise noted, the factual background is based on my review of the entire record, including the parties' 56.1 statements, which are not especially detailed. On a motion for summary judgment, the Court's consideration is limited to factual material that would be admissible in evidence at trial. *Local Unions 20 v. United Bhd. of Carpenters and Joiners of Am.*, 223 F. Supp. 2d 491, 496 (S.D.N.Y. 2002). Factual allegations that are disputed without a citation to admissible evidence are deemed admitted, as long as they are also supported by the record. Local Civ. R. 56.1; *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003). Factual allegations that are not disputed are deemed admitted, as long as

after she entered the store, the plaintiff noticed a round piece of red cake, approximately four to five inches in diameter, on the floor near the bread and produce displays.  (*Id.* ¶¶ 7, 8; ECF No. 33-8, Richardson Dep. 17:6-11.)  The plaintiff told a Costco employee about the cake, and he replied that he or another employee would take care of it.  (ECF No. 33-4, Pl. Dep. 37:21-38:5; Richardson Dep. 19:20-21:12.)  The plaintiff and her niece continued shopping in other parts of the store.  (Richardson Dep. 10:5-11:19.)

Approximately ninety minutes later, the plaintiff and her niece returned to the bread and produce section so that the plaintiff could get some honey wheat bread.  (*Id.* 11:18-24.)  When she did not find the bread, she walked back to her niece, but slipped and fell on her side.  (Pl. Dep. 43:8-12, 61-62; Def. 56.1 ¶ 9.)  A shopper and a Costco employee from the bakery section, Veronica Johnson, helped the plaintiff up; the shopper escorted the plaintiff downstairs to the manager's office, where the plaintiff filled out an incident report in which she described her incident as follows: "I slipped on something on the floor and fell on my side (right)."  (ECF No. 33-9; Pl. Dep. 62:7-68:16, 75:3-22.)

Pursuant to store policy, Costco employees conduct "floor walks" on an hourly basis.  (ECF No. 33-5, Ramgolam Dep. 12:5-14; ECF No. 33-7, Johnson Dep. 27:13-28:21.)  During a floor walk, a Costco employee walks throughout the store to clear debris from the aisles and monitor the freezer temperatures.  (Johnson Dep. 27:16-23.)  The employee records the results from the walk on a "Daily Floor-walk/Safety Inspection" worksheet, which is then signed by a manger.  (Ramgolam Dep. 19.)  Alex Ramgolam did a floor walk from 7:06 p.m. to 7:46 p.m. on

---

they are also supported by the record.  *Id.*  I disregard any arguments in the Rule 56.1 statements.  *Pape v. Dircksen & Talleyrand Inc.*, No. 16-CV-5377, 2019 WL 1435882, at *2 (E.D.N.Y. Feb. 1, 2019), *report and recommendation adopted*, 2019 WL 1441125 (E.D.N.Y. Mar. 31, 2019).

the night of the plaintiff's fall.  (ECF No. 33-11; Ramgolam Dep. 24:16-26:6.)  He did not note any dangerous conditions on the worksheet.  (ECF No. 33-11.)

The parties dispute what caused the plaintiff's fall.  According to Ms. Johnson, something that looked like the top of a strawberry or a partially eaten strawberry was on the floor near where the plaintiff was lying.

> Q: So describe the strawberry top that you saw after the woman got up off of the floor.
>
> A: It looked exactly like a bitten strawberry.  Like if you take a bite out of the strawberry, what was left, is what was on the floor.
>
> Q: Was the green little stem left intact on top of the strawberry?
>
> A: Yes.

(Johnson Dep. 17:15-24.)

Ms. Johnson photographed the strawberry after the plaintiff got up.  (*Id.* 19:13-16; ECF No. 33-10.)

The plaintiff, on the other hand, attributes the fall to the piece of red cake.  At her deposition, she conceded that she did not look at the floor after she slipped.

> Q: [A]t any time before you left to go downstairs to the cashier, did you look at that area where you slipped?
>
> A: No.
>
> Q: Can you tell me anything about what it looked like in that area that day after your accident before you went downstairs?
>
> A: I didn't look back there.
>
> Q: So you have no observations?
>
> A: No observations.

(Pl. Dep. 81:3-14.)  Nevertheless, she saw bits of cake on her shoes and clothes after she fell.

3

> Q: What was on your shoes after the accident?
>
> A: The red cake.
>
> . . .
>
> Q: Was there any material anyplace else on your body other than your right shoe . . . between your ankle and knee?
>
> A: Between my ankle and my knee.
>
> Q: What did you see there?
>
> A: It looked like pieces of cake.

(*Id.* 46:23-25, 83:14-84:14.)  According to the plaintiff's niece, Miranda Richardson, the plaintiff fell on "something red . . . I'm just assuming it probably was a cake, I don't know." (Richardson Dep. 16:5-13; *see also id.* 45:8-11 ("It looks like red, as I just said, I don't know if it's cake or something, but it looks red, exactly the same thing that when we came in, what was on the floor.").)

The plaintiff and Ms. Richardson submitted affidavits, executed after their depositions, in support of the plaintiff's opposition to summary judgment.  In the plaintiff's affidavit, she states that she slipped on "pieces of cake, possibly carrot cake or red velvet cake, and maybe some pieces of red fruit or cake decoration as well."  (ECF No. 36-1 ¶ 4.)  In addition, she states that Johnson's photograph shows "at least 2 of the pieces of the red cake that were on the floor before and at the time of my accident" although "some of the substance ended up on my clothing after I fell in it and was struggling to get off the floor."  (*Id.* ¶¶ 11, 16.)

Although Ms. Richardson testified at her deposition that the plaintiff fell on "something red" which she "just assum[ed] . . . was a cake," she states in her affidavit that she is "certain" that her aunt slipped on "the same substance that existed on the floor at the time [the plaintiff] complained to the store employee" about the red cake.  (ECF No. 36-2 ¶ 6.)  Ms. Richardson

4

states further that her aunt "slipped and fell on a red substance on the floor that looked like pieces of cake and a partial piece of strawberry." (*Id.* ¶ 4.)

In addition to the affidavit, the plaintiff made substantive changes to her deposition transcript and submitted a "correction" sheet in connection with her brief. The plaintiff's correction sheet makes the following changes, among others, to her testimony:

| **Original (ECF No. 33-4)** | **Correction (ECF No. 37-2)** |
|---|---|
| Q: Is this four to five inch piece of cake that you saw an hour and a half before what you claim you stepped on?<br><br>A: Apparently that's the same thing.<br><br>Q: When you say apparently, do you know for a fact?<br><br>A: Well, it was in the same area I fell down.<br><br>(41:9-17) | Q: Is this four to five inch piece of cake that you saw an hour and a half before what you claim you stepped on?<br><br>A: Apparently that's the same thing.<br><br>Q: When you say apparently, do you know for a fact?<br><br>A: **Yes**.<br><br>(41:9-17) |
| Q: At any time before you got up, did you look at that area three feet away from where you slipped?<br><br>A: No.<br><br>Q: At any time after you got up, did you look at that area that had been three feet away from where you slipped?<br><br>A: Did I look there? I only paid attention – I can't remember if I looked there.<br><br>(80:13-22) | Q: At any time before you got up, did you look at that area three feet away from where you slipped?<br><br>A: **Yes**.<br><br>Q: At any time after you got up, did you look at that area that had been three feet away from where you slipped?<br><br>A: **Yes**.<br><br>(80:13-22) |

| | |
|---|---|
| Q: I just want to know about the area where you slipped – at any time before you left to go downstairs to the cashier, did you look at that area where you slipped? <br><br> A: No. <br><br> Q: Can you tell me anything about what it looked like in that area that day after your accident before you went downstairs? <br><br> A: I didn't look back there. <br><br> (81:2-12.) | Q: I just want to know about the area where you slipped – at any time before you left to go downstairs to the cashier, did you look at that area where you slipped? <br><br> A: **Yes**. <br><br> Q: Can you tell me anything about what it looked like in that area that day after your accident before you went downstairs? <br><br> A: **Red Cake**. <br><br> (81:2-12.) |

**LEGAL STANDARD**

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits or other documentation show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the burden of showing the absence of any genuine dispute as to a material fact. *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997) (citation omitted).

A fact is "material" when it "might affect the outcome of the suit under the governing law," and an issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 F. App'x. 22, 25 (2d Cir. 2011) (internal citations omitted). Once the moving party has met its burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial. *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y.

2015) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)).

## DISCUSSION

To establish a *prima facie* case of negligence under New York law, "a plaintiff must demonstrate '(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof.'" *Lionel v. Target Corp.*, 44 F. Supp. 3d 315, 318 (E.D.N.Y. 2014) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981) (citations omitted)). "In order to show breach of a duty of care in a slip-and-fall case," *id.*, the plaintiff must demonstrate a genuine issue of material fact "that the defendant created the condition which caused the accident or that the defendant had actual or constructive notice of the condition," *Hatley v. Waldbaum, Inc.*, 69 A.D.3d 902, 903 (2d Dep't 2010) (citations omitted). To constitute constructive notice, "a defect must be visible and apparent and it must exist for a sufficient length of time prior to the accident to permit defendant's employees to discover and remedy it." *Id.* (citations omitted).

### I. Actual Notice

It is undisputed that the defendant had actual notice that there was red cake on the floor. (Def. 56.1 ¶ 7.)[3] The plaintiff argues that she has raised a question of fact as to whether the red cake caused her fall. (ECF No. 36.) The defendant counters that there is no legitimate evidence that the red cake caused the plaintiff's fall, and moves to strike the plaintiff's deposition correction sheet and post deposition affidavits. (ECF No. 37.)

---

[3] Curiously, the defendant included this fact in its stipulation of undisputed facts, but then argued in its brief that the evidence supporting the fact is inadmissible hearsay because the plaintiff could not identify the Costco employee to whom she spoke. (ECF No. 37 at 5.) The defendant should not stipulate to facts the evidentiary basis of which it intends to challenge on summary judgment. In any event, the plaintiff's statements that she told an employee about the cake are not hearsay.

7

The plaintiff's correction sheet is unusual, to say the least. She made substantive changes to her testimony that bear on central issues of the case, going so far as to change answers from "no" to "yes." For example, the plaintiff testified at least five separate times during her deposition that she did not look back at the spot on the floor where she slipped and fell. In the correction sheet, however, the plaintiff changes each response, and asserts that she did in fact look back at the floor where she fell. And, she altered her response to this question: "Can you tell me anything about what it looked like in that area that day after your accident before you went downstairs?" from her original answer—"I didn't look back there"—to "Red Cake" in the correction sheet. The form correction sheet, which the plaintiff submitted with her corrections, includes a column entitled "Reason for change;" the plaintiff wrote "correction" as the reason for each change. (*See* ECF No. 37-2.)

Under Rule 30(e), a witness is permitted to review the transcript of her deposition and make changes "in form or substance" and must include the reasons for making those changes. Fed. R. Civ. P. 30(e)(1)(B). A judge in another jurisdiction might very well consider striking the plaintiff's correction sheet and imposing sanctions. *Greenway v. Int'l Paper Co.*, 144 F.R.D. 322, 325 (W.D. La. 1992) ("The Rule cannot be interpreted to allow one to alter what was said under oath . . . A deposition is not a take home examination."). In the Second Circuit, however, courts "construe Rule 30(e) broadly, permitting any changes to the deposition to be considered as part of the record, even where they contradict the original answers." *Samad Bros., Inc. v. Bokara Rug Co., Inc.*, No. 09-CV-5843, 2012 WL 43613, at *8 (S.D.N.Y. Jan. 9, 2012) (collecting cases); *see also Podell v. Citicorp Diners Club, Inc.*, 112 F.3d 98, 103 (2d Cir. 1997) ("A deponent invoking this privilege must sign a statement reciting such changes and the reasons given for making them, but the language of the Rule places no limitations on the type of changes

8

that may be made nor does the Rule require a judge to examine the sufficiency, reasonableness, or legitimacy of the reasons for the changes, even if those reasons are unconvincing.") (citations, alterations and internal quotation marks omitted).

What this means is that the defendant has no remedy on summary judgment. Of course, the defendant will be permitted to impeach the plaintiff's testimony at trial using her original answers, and will be able to question her about the timing and circumstances of the changes. *See Podell*, 112 F.3d at 103 ("[W]hen a party amends his testimony under Rule 30(e), the original answer to the deposition questions will remain part of the record and can be read at trial.") (citations, alterations and internal quotation marks omitted); *Toland v. Forest Laboratories, Inc.*, No. 00-CV-4179, 2001 WL 30617, at *1 (S.D.N.Y. Jan. 11, 2001) ("The changes obviously may affect the trier of fact's view of the credibility of the witness. Surely a skilled cross-examiner is well able to deal with the existence of contradictory sworn statements by an adverse witness.").

The defendant also maintains that the post deposition affidavits are "shams" that I should disregard under the "sham affidavit" rule. (ECF No. 37 at 4.) Under the rule, a plaintiff cannot submit a declaration that contradicts her own prior deposition testimony. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 43 (2d Cir. 2000) ("[I]n opposing summary judgment, a party who has testified to a given fact in his deposition cannot create a triable issue merely by submitting an affidavit denying the fact.") (citing *Perma Research and Dev. Co. v. Singer Co.*, 410 F.2d 572, 578 (2d Cir. 1969)). The rule does not apply in two situations: "first, where the subsequent sworn statement either does not actually contradict the affiant's prior testimony or addresses an issue that was not, or was not thoroughly, explored in the deposition, and second, where that testimony is contradicted by evidence other than the deponent's subsequent affidavit, for when such other evidence is available, the concern that the proffered issue of fact is a mere

9

'sham' is alleviated." *Torrico v. Int'l Bus. Mach. Corp.*, 319 F. Supp. 2d 390, 394 n.2 (S.D.N.Y. 2004) (quoting *Corio*, 232 F.3d at 43-44) (internal quotation marks omitted).

Like the correction sheet, the affidavits are obviously designed to shore up damaging deposition testimony. For example, both the plaintiff and Ms. Richardson equivocated during their depositions about what caused the plaintiff's fall. The plaintiff testified that the substance she slipped on was "apparently [] the same thing" as the red cake she observed on the floor ninety minutes earlier. (Pl. Dep. 41:12-13.) Ms. Richardson testified that her aunt fell on "something red . . . I'm just assuming it probably was a cake, I don't know." (Richardson Dep. 16:10-12.) In contrast, both express certainty in their affidavits that the plaintiff slipped on the same red cake she had seen before. (ECF No. 36-1 ¶ 15 ("That substance is at precisely the same location as it was one and a half hours prior to my accident and was exactly the same color as the substance that I complained about to the Costco employee before the happening of my accident."); ECF No. 36-2 ¶ 6 ("I am certain that it was the same substance that existed on the floor at the time [the plaintiff] complained to the store employee an hour and a half before her accident.").)[4]

Nevertheless, the affidavits embellish rather than contradict the deposition testimony. The plaintiff's previous vague answers—that what she slipped on was "apparently" red cake—is given new detail: "possibly carrot cake or red velvet cake, and maybe some pieces of red fruit or cake decoration as well." (ECF No. 36-1 ¶ 4.) Ms. Richardson's former ambivalence—"I'm just assuming it probably was a cake, I don't know"—becomes certainty: "I am certain that it was the

---

[4] The affidavits seem to make use of evidence to which neither the plaintiff nor Ms. Richardson had access when they testified at their depositions. Thus, the statements in both affidavits now align with photographic evidence and Ms. Johnson's testimony that the plaintiff slipped on a half-eaten strawberry.

10

same substance that existed on the floor at the time [the plaintiff] complained to the store employee an hour and a half before her accident." (ECF No. 36-2 ¶ 6.)

The sham affidavit rule does not bar such editorializing in this Circuit. *See Gorzynksi v. JetBlue Airways Corp.*, 596 F.3d 93, 104 (2d Cir. 2010) ("If, however, the allegations in the affidavit, rather than contradicting, explain or amplify prior deposition testimony, then the affidavit may create a genuine issue of material fact sufficient to defeat summary judgment.")(citation omitted); *see also LeBlanc v. United Parcel Serv.*, No. 11-CV-6983, 2014 WL 1407706, at *9 (S.D.N.Y. Apr. 11, 2014) (noting that "[s]ome courts have suggested . . . that [the sham affidavit rule] will not bar an affidavit when an issue was not fully explored in the deposition, or the deponent's responses were ambiguous.") (citations and internal quotation marks omitted). It is for the jury to decide whether these modifications are persuasive or damaging to the plaintiff's credibility. *Buie v. City of New York*, No. 12-CV-4390, 2015 WL 6620230, at *3 (E.D.N.Y. Oct. 30, 2015) ("On balance, after reviewing plaintiff's deposition . . . the Court readily concludes that while the affidavit may undermine her credibility before the jury it is of no real consequence in the Court's determination of the motion.").

The post deposition adjustments will no doubt be fertile ground for cross-examination, but I will not disregard them. In any case, the plaintiff's original testimony—that there was red cake on her shoes and pants after her fall—would have been sufficient to defeat summary judgment.

## II. Constructive Notice

The plaintiff did not respond to the defendant's arguments that it did not have constructive notice of the strawberry hazard. Accordingly, the plaintiff has abandoned the theory that the defendant had constructive notice of the existence of a different hazard. *See Harte v.*

11

*Ocwen Fin. Corp.*, No. 13-CV-5410, 2014 WL 4677120, at *8 (E.D.N.Y. Sept. 19, 2014) ("Given Plaintiff's lack of opposition to this particular cause of action, the Court understands Plaintiff to have abandoned these claims.") (collecting cases).

The constructive notice theory does not survive summary judgment in any event. Under New York law, "[t]o meet its initial burden on the issue of lack of constructive notice, the defendant must offer some evidence as to when the area in question was last cleaned or inspected relative to the time the plaintiff fell." *Birnbaum v. New York Racing Ass'n, Inc.*, 57 A.D.3d 598, 598-99 (2d Dep't 2008) (citations omitted). The defendant has presented evidence that an employee patrolled the store in the hour before the plaintiff's fall and did not find any hazardous conditions, and the plaintiff has not offered any evidence in opposition. This is sufficient to establish a lack of constructive notice. *See Morahan-Gick v. Costco Wholesale Corp.*, 116 A.D.3d 747 (2d Dep't 2014) ("Here, the evidence submitted by the defendant, which included, among other things, its maintenance record for the day of the incident, was sufficient to establish, prima facie, that it did not create the allegedly dangerous condition or have actual or constructive notice of it . . . In opposition, the plaintiff failed to raise a triable issue of fact.") (citations omitted); *Sloane v. Costco Wholesale Corp.*, 49 A.D.3d 522, 523 (2d Dep't 2008) ("Here, the defendant sustained this burden by submitting evidence that it did not create the condition which caused the plaintiff's fall, and that no spills or other hazards were found when an employee conducted a walk-through inspection of its store just minutes before the accident occurred. In opposition, the plaintiff failed to raise a triable issue of fact.") (citation omitted).

## CONCLUSION[5]

Accordingly, the defendant's motion for summary judgment is denied in part and granted in part. The plaintiff may proceed to trial on an actual notice theory of negligence. The constructive notice theory of negligence is dismissed.

**SO ORDERED**.

                                                                                            s/Ann M. Donnelly

                                                                                            Ann M. Donnelly
                                                                                            United States District Judge

Dated: Brooklyn, New York
       May 12, 2020

---

[5] On April 27, 2020, I ordered the plaintiff to submit a version of her 56.1 statement that complies with the formatting requirements in my individual practices and rules. In light of the COVID-19 pandemic, and in the interest of efficiency, I rescind that order.